IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-HC-2115-FL

|                              |   |           |
|------------------------------|---|-----------|
| JAMES EARL RICHARDSON,       | ) |           |
|                              | ) |           |
| Petitioner,                  | ) |           |
|                              | ) |           |
| v.                           | ) | ORDER     |
|                              | ) |           |
| SUPERINTENDENT JOYCE         | ) |           |
| KORNEGAY,                    | ) |           |
|                              | ) |           |
| Respondent.                  | ) |           |

The matter comes before the court on respondent's motion for summary judgment (DE 7) pursuant to Federal Rule of Civil Procedure 56(a), motion to exceed the page limitation (DE 11), and motion to strike (DE 22). The matter also is before the court on petitioner's motion to exceed the page limitation (DE 30). Respondent's motion for summary judgment and motion to strike were fully briefed. The parties did not respond to their respective motions to exceed the page limitation. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants the motions to exceed the page limitation and grants in part and denies in part respondent's motion to strike. The court also grants respondent's motion for summary judgment.

## STATEMENT OF CASE

On April 6, 2011, petitioner was found guilty after a jury trial in the Pitt County Superior Court of two counts each of first-degree murder and discharging a weapon into occupied property. See State v. Richardson, No. COA12-731, 2013 WL 793569, at *2 (N.C. App. March 5, 2013). The trial court then sentenced petitioner to consecutive sentences of life in prison without the possibility

of parole for the two counts of first degree murder.  Id.  The trial court also sentenced petitioner to respective sentences of 25-39 and 73-97 months for the two counts of discharging a weapon into occupied property.  Id.  On March 5, 2013, the North Carolina Court of Appeals issued an unpublished opinion finding no error in petitioner's conviction and sentence. Richardson, 2013 WL 793569, at * 10.

On September 11, 2014, petitioner, acting through counsel, filed a motion for appropriate relief ("MAR") in the Pitt County Superior Court.  (Resp't's Appx. Ex. 9).  The superior court denied the MAR on February 19, 2016.  (Pet. Ex. 3).  On April 29, 2016, petitioner filed a petition for a writ of certiorari in the North Carolina Court of Appeals.  (Id. Ex. 4).  Certiorari was denied on May 18, 2016.  (Id.)

On May 20, 2016, petitioner, acting through counsel, filed the instant petition for a writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254.  Petitioner raised the following claims: (1) he was denied the right to present favorable evidence when the trial court excluded testimony from his eyewitness identification expert; (2) he received ineffective assistance of counsel; (3) he was denied a fair and impartial jury in violation of the Sixth and Fourteenth Amendments to the United States Constitution; (4) he is actually innocent of his convictions based upon newly discovered evidence; and (5) he was denied due process in violation of the Fourteenth Amendment due to racial animosity in the jury's deliberations.

On July 21, 2016, respondent filed a motion for summary judgment, arguing that petitioner is not entitled to habeas relief for his claims.  Respondent also filed a motion for leave to exceed the page limitation for her brief in support of her motion for summary judgment.  Respondent's motion for summary judgment was fully briefed.  On November 23, 2016, respondent filed a motion to

strike four affidavits petitioner submitted in response to respondent's motion for summary judgment. The motion was fully briefed. On January 5, 2017, petitioner filed a motion seeking permission to exceed the page limitation for his brief in response to respondent's motion for summary judgment.

## STATEMENT OF FACTS

The facts as stated by the North Carolina Court of Appeals are summarized as follows:

> The State presented evidence that in June 2009, defendant borrowed a white 1993 BMW 525 ("the BMW") from a friend. On 30 June 2009, defendant drove the BMW to a bar called The Other Place ("the OP") in Greenville, North Carolina and parked in a nearby lot. Several friends accompanied defendant to the OP, including his brother, Andre Richardson ("Andre"), Cario Arrington ("Arrington"), and Latoya Boyd ("Boyd").

> After engaging in an altercation at the OP, defendant was escorted from the bar. When Arrington and Andre observed defendant leaving the bar, they followed him outside. Once outside, another fight ensued between defendant and Matt Blackmon ("Blackmon"), a co-owner of the OP.

> When the fight ended, several individuals observed defendant, or someone fitting his description, jogging from the OP toward a white BMW. Rachel Burke ("Burke") observed the person who approached the BMW remove a handgun from the trunk of the vehicle and cock the gun then enter the vehicle and drive away. Although Burke could not identify defendant as the driver of the BMW, Jeff Sealy ("Sealy") did. Following the altercation at the OP, Sealy followed defendant, saw him remove a gun from a white BMW he was driving, enter the vehicle and drive towards the OP.

> As Arrington and Andre walked to their car, Arrington observed a white vehicle, later identified as a BMW, speeding by and subsequently heard shots fired. Bystanders in the OP parking lot also observed a white BMW speeding and traveling the wrong way on a one-way street. The parking lot bystanders indicated that a portion of the shooter's arm was visible, described the arm as light-skinned and stated that the shooter held a gun. However, only one observer, Vidal Thorpe ("Thorpe"), identified defendant as the shooter. Thorpe was acquainted with defendant and saw defendant's profile as he shot

3

the gun from the vehicle. As a result of the shots that were fired, two men were injured, Edgar Landon Blackley and Charles Andrew Kirby. Both men died as a result of gunshot wounds to their chests.

Arrington and Andre rejoined defendant at a friend's house later that morning. When Arrington arrived, he noticed the BMW was parked a few houses up the street. Arrington then observed some individuals sitting in the BMW but could not identify them. Subsequently, defendant, Arrington, Andre and Boyd traveled to Raleigh and stayed in a hotel until the next afternoon.

When the officers investigated, they recovered six spent .45 casings from the area surrounding the shooting. All the casings had been fired from the same gun and were consistent with being fired from a Highpoint brand gun. Defendant owned a Highpoint .45 semi-automatic handgun.

A few days after the shooting, defendant contacted Detective Sean Moore ("Detective Moore"), a childhood friend and inquired if the situation was "f'd up" or "did [defendant] 'f up?' " Detective Moore advised defendant that the situation was "not good." Several days later, defendant contacted Detective Moore again. This time, defendant indicated he was ready to surrender to law enforcement. Detective Moore arrested defendant.

Richardson, 2013 WL 793569, at *1-2.

## DISCUSSION

A.     Motions to Exceed the Page Limitation

The parties each request permission to exceed the page limitation for their respective memorandums in support and in opposition to summary judgment. For good cause shown, the motions are GRANTED.

4

B.      Motion to Strike

Respondent seeks to strike four affidavits which petitioner attached to his response to respondent's motion for summary judgment on the grounds that the affidavits were signed after petitioner's post-conviction proceedings and were not considered by the state post-conviction court. In Cullen v. Pinholster, 563 U.S. 170 (2011), the Supreme Court determined that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Id. at 181-182. Cullen states that "[p]rovisions like §[]2254(d)(1) [] ensure that federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." Id. at 186 (internal quotations and citations omitted); see also Harrington v. Richter, 562 U.S. 86, 103 (2011) ("Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions").

The affidavits at issue were executed by the following: Thomas J. Moore ("T. Moore"), an attorney appointed to represent petitioner at trial; Constance E. Widenhouse ("Widenhouse"), an attorney assigned to represent petitioner on appeal; Lamuel Anderson, who served as a juror during petitioner's trial; and Debbie Anderson, Lamuel Anderson's wife. ((DE 21), Exs. B-D; (DE28), Attach. 1).[1] The court begins with the affidavits of Lamuel and Debbie Anderson which petitioner provided in support of his jury-related claims. Petitioner argues that these affidavits should be considered by the court because they contain information identical to the information contained in an affidavit from law student Brian T. Ziegler ("Ziegler"), which was presented to the MAR court.

---

[1] Petitioner inadvertently failed to attach a copy of Debbie Anderson's affidavit to petitioner's response to respondent's motion for summary judgment. Petitioner, however, later attached the affidavit to his response to respondent's motion to strike. (See (DE 28), Attach. 1).

(See (DE 9), Ex. 9, pp. 76-79).  While the new affidavits present information which is substantially similar to the information contained in Mr. Zeigler's affidavit, Lamuel Anderson's affidavit also contains new information regarding his recollection of a white juror talking about having driven past the location where the shooting occurred during trial.  (Compare (DE 9), Ex. 9, pp. 76-79, 81-84 and (DE 21), Ex. D).

Regardless of whether the affidavits contain new information or information which already was presented to the court, they pertain to petitioner's jury-related claims which were adjudicated on the merits by the MAR court.  The affidavits themselves were not presented to the MAR court. Thus, consideration of the affidavits of Lamuel and Debbie Anderson is precluded pursuant to the Court's ruling in Cullen, and respondent's motion to strike is GRANTED as to these affidavits. See Cullen, 563 U.S. at 181-82; see also, Williams v. Witherspoon, No. 3:14CV598, 2015 WL 5009210, at *4 (W.D.N.C. Aug. 21, 2015) (stating that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."), appeal dismissed, No. 15-7588, 2016 WL 3997236 (4th Cir. July 26, 2016).

The court now considers the affidavits of T. Moore and Widenhouse, which petitioner submitted in support of his ineffective assistance of counsel claim.  As discussed further below, the MAR court determined that petitioner's ineffective assistance of counsel claim was procedurally barred pursuant to N.C. Gen. Stat. § 1419(a)(3).  As such, this claim was not adjudicated on the merits by the state court and is not subject to the analysis set forth by the Court in Cullen. See Cullen, 563 U.S. at 181-182; Gallow v. Cooper, 133 S. Ct. 2730, 2731 (2013) (suggesting that new affidavits may be used to overcome procedural default) (denying certiorari petition).  Thus, respondent's motion to strike the affidavits of T. Moore and Widenhouse is DENIED.

6

C.     Motion for Summary Judgment

1.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986).  The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial.  Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d).  That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court.  Williams v. Taylor, 529 U.S. 362, 406 (2000).  A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies

7

the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407; see White v. Woodall, 134 S. Ct. 1697, 1702–07 (2014); Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (per curiam). A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

Congress intended the standard in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to be difficult to meet. See White, 134 S. Ct. at 1702 (2014); Harrington, 562 U.S. at 102. "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington, 562 U.S. at 103. To prevail in an action brought under section 2254(d), a petitioner must show that "there was no reasonable basis for the state court to deny relief." Id. at 784; see DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011).

8

2.      Analysis

      a.      Exclusion of Eyewitness Expert Testimony

In his first claim, petitioner asserts that the trial court denied him the right to present favorable evidence and hindered his ability to present a complete defense when it excluded testimony from petitioner's eyewitness identification expert, Dr. Lori Van Wallendael ("Dr. Wallendael"), in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The court of appeals adjudicated this claim and determined that the superior court did not abuse its discretion when it concluded that the eyewitness expert testimony would have been unfairly prejudicial and was more prejudicial than probative. <u>Richardson</u>, 2013 WL 793569 at *3. In particular, the court of appeals reasoned:

> In the instant case, witnesses for the State and defendant provided conflicting testimony regarding the identification of the shooter. While several of the witnesses described the shooter as having characteristics matching those of defendant, the descriptions were not identical. Only one witness, Thorpe, indicated that he saw defendant's profile in the car and identified him as the shooter. Dr. Van Wallendael visited the scene, reviewed witness statements and lineup materials and observed some of the in-court testimony. However, she did not interview the witnesses and did not hear all of the in-court testimony, particularly the testimony of the defense witnesses and Thorpe's testimony. Defendant indicates that he only intended to question Dr. Van Wallendael regarding the testimony of the witnesses whose testimony she did observe. However, since she did not hear the testimony of the defense witnesses, she would have only testified about the reliability of the State's witnesses' identification. Therefore, the trial court did not abuse its discretion by concluding that the testimony would have been unfairly prejudicial and was more prejudicial than probative.

<u>Id.</u>

Generally, "[i]t is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions" such as the admissibility of evidence. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). Rather, it is only in "circumstances impugning fundamental fairness or infringing specific constitutional protection that a federal question is presented." Barbe v. McBride, 521 F.3d 443, 452-453 (4th Cir. 2008) (internal citation and quotation omitted). One such constitutional protection is the meaningful opportunity for a criminal defendant to present a complete defense. Holmes v. South Carolina, 547 U.S. 319, 324 (2006); Crane v. Kentucky, 476 U.S. 683, 690 (1986) (finding that a state may devise rules to exclude evidence in criminal trials as long as the rules are not arbitrary and do not prevent "a meaningful opportunity to present a complete defense.") (citation omitted); Chambers v. Mississippi, 410 U.S. 284, 302 (1973) ("We conclude that the exclusion of this critical [hearsay] evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process."). This right, however, is not unrestricted, and trial judges are permitted to exclude evidence "if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes, 547 U.S. at 326 (citations omitted); see, e.g., Hester v. Ballard, No. 5:13-cv-21007, 2015 WL 5474083, at *7 (S.D.W.Va. Sept. 17, 2015) (stating that many of the rules governing the admissibility of evidence remain widely accepted and are not affected by Holmes), aff'd, No. 15-7605, 2017 WL 588357 (4th Cir. Feb. 14, 2017).

In the case at hand, the decision of whether to admit Dr. Wallendael's testimony was within the trial court's discretion in accordance with both United States Supreme Court and Fourth Circuit Court of Appeals precedent. See Holmes, 547 U.S. at 326; Moore v. Hardee, 723 F.3d 488, 497 (4th

Cir. 2013) ("[E]xpert testimony on eyewitness identification is not automatically admitted; when allowed, its admissibility is generally at the court's discretion, both under federal and North Carolina law."); United States v. Bellamy, 26 F. App'x 250, 259 (4th Cir. 2002) ("[E]xcept for narrow circumstances, expert testimony on the reliability of witness identification almost by definition, can be of no assistance to a jury[.]") (internal quotation omitted). In fact, the Court in Holmes specifically acknowledged a trial court's ability to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice. Holmes, 547 U.S. at 326. This is precisely what occurred in the instant action. Finally, any prejudice from the trial court's ruling was remedied by the fact that petitioner's counsel vigorously cross-examined the State's identification witnesses and highlighted inconsistencies related to the shooter's attire, the model and speed at which the shooter's car was traveling, and the number of people at the scene. (TR: pp. 1044, 1048, 1052, 1063, 1126, 1433, 1438, 1442, 1443, 1451, 1455, 1502, 1504, 1508, 1521, 1518-19, 1529, 1542, 1566); Moore, 723 F.3d at 498 (stating that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.") (quotation omitted).

Even if petitioner could establish that the eyewitness expert testimony was improperly excluded, he cannot show that the exclusion of the testimony had a "substantial and injurious effect or influence" at trial. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotations omitted). Here, petitioner's conviction did not hinge upon a single eyewitness identification. Rather, there were multiple eyewitness accounts heard by the jury, including an eye-witness who knew petitioner. (TR. p. 1542). The record, additionally, contains other evidence of petitioner's guilt including the fact that petitioner had borrowed a white 1993 BMW 525 from a friend and had driven the BMW to the bar where the shooting occurred. Richardson, 2013 WL 793569 at *1-2.

11

The record also reflects that petitioner was escorted from the bar after engaging in an altercation shortly before the shooting and that a white BMW was seen near a house where a witness met petitioner the day after the shooting. Id. Finally, the record reflects that petitioner owned a Highpoint brand .45 semi-automatic handgun (the same type of gun used in the shooting), that petitioner's DNA and personal belongings were found in the white BMW, that gunshot residue was found in the interior of the white BMW, and that petitioner asked a detective friend whether petitioner was "f'd up" or "did [petitioner] f up?" Id.; (TR. p. 1890; 2193-94; 2438-39).

Based upon the foregoing, the court of appeal's decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the court of appeal's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Thus, respondent's motion summary judgment is GRANTED as to this claim.

b.      Ineffective Assistance of Counsel

In his second claim, petitioner contends that his trial counsel rendered ineffective assistance in the handling of Dr. Wallendael's proposed expert testimony regarding eyewitness identification. Petitioner did not raise this claim on direct appeal, but did raise it in his MAR, and the MAR court denied the claim as procedurally barred pursuant to N.C. Gen. Stat. § 1419(a)(3).

Section 15A-1419(a)(3) of the North Carolina General Statutes provides that a MAR shall be denied when a defendant is in an adequate position to have raised the claim on appeal but did not do so. In this case, the MAR court denied and dismissed petitioner's MAR pursuant to N.C. Gen. Stat. § 15A-1419 because petitioner "was in a position to adequately raise the issue of ineffective

12

assistance of counsel on direct appeal and did not do so." (Pet. Ex. 4, p. 6). Section 15A-1419(a)(3) is an independent and adequate state procedural bar, precluding federal habeas review. See Lawrence v. Branker, 517 F.3d 700, 714-15 (4th Cir. 2008) (recognizing § 15A-1419(a)(3) as an adequate and independent state ground for procedural default); see also, Luke v. Joyner, No. 3:15CV168-FDW, 2016 WL 7104256, at *7 (W.D.N.C. Dec. 5, 2016) ("Under North Carolina law, ineffective assistance of trial counsel claims that are apparent from the cold record must be brought by the defendant on direct appeal."). A federal habeas court may not review the merits of a procedurally barred constitutional claim absent cause and prejudice or a miscarriage of justice. See Brown v. Lee, 319 F.3d 162, 169 (4th Cir. 2003).

Petitioner argues that his ineffective assistance of counsel claims is not procedurally barred because ineffective assistance of counsel claims generally should not be raised on direct appeal. In McCarver v. Lee, 221 F.3d 583, 589 (4th Cir. 2000), the Fourth Circuit held that a claim for ineffective assistance of counsel may be procedurally defaulted, but that § 15A-1419(a)(3) "is not a general rule that any [ineffective assistance of counsel] claim not brought on direct appeal is forfeited on state collateral review." Id. at 589. Rather, "the rule requires North Carolina courts to determine whether the particular claim at issue could have been brought on direct review." Id. The North Carolina Supreme Court has held that ineffective assistance of counsel claims raised first on collateral review are procedurally defaulted pursuant to section 15A-1419(a)(3) "when the 'cold record' reveals that no further investigation would have been required to raise the claim on direct review." Lawrence, 517 F.3d at 715 (citing State v. Fair, 354 N.C. 131, 166 (2001)). "Otherwise, [ineffective assistance of trial counsel] claims 'should be considered through motions for appropriate

relief and not on direct appeal.'" Fowler v. Joyner, 753 F.3d 446, 463 (4th Cir. 2014) (quoting State v. Stroud, 147 N.C. App. 549, 557 S.E.2d 544, 547 (2001)).

In the case at hand, petitioner's argues that the MAR court should not have procedurally barred petitioner's ineffective assistance of counsel claim because there was insufficient information in the record before the court of appeals to raise a claim of ineffective assistance of counsel. (Widenhouse Aff. ¶ 8). Petitioner's appellate counsel, Widenhouse, attests that "there was nothing in the record to show why [Dr. Wallendael] did not interview all of the witnesses, why she was not in the court when the defense witnesses testified, or why she was not in court to hear Thorpe's testimony." (Id.) The record, however, does provide answers to the questions raised by appellate counsel. Specifically, the reflects that petitioner's trial counsel addressed why Dr. Wallendael was not in court to hear the testimony of all the witnesses during the *voir dire* of Dr. Wallendael. Specifically, counsel stated that "[i]n a perfect world, we would have loved to have had Dr. Van Wallendael hear from Day One all the way through today, but she is a witness that is being paid, she has a job, she does not have the ability to be here for every witness." (TR. p. 2650). Petitioner's counsel, additionally, recognized the importance for eyewitness identification experts to actually speak to the witnesses, but stated during the *voir dire* of Dr. Wallendael that "because you have State witnesses who are under subpoena by the State and timing issues, that was an impossibility." (Id.) Finally, petitioner's counsel indicated at trial that he only intended to question Dr. Wallendael regarding the testimony of witnesses whose testimony she did observe. See Richardson, 2013 WL 793569, at *3. Based upon the foregoing statements made by petitioner's trial counsel during the *voir dire* of Dr. Wallendael, the record provided sufficient factual basis for the ineffective assistance of counsel claim to be raised on appeal.

Petitioner, additionally, would not have suffered any prejudice had he raised his ineffective assistance of counsel claim on direct appeal. Had petitioner raised the claim on appeal and had the North Carolina Court of Appeals determined that the claim was prematurely asserted, the court of appeals would have dismissed the claim without prejudice so that petitioner could have reasserted the claim in his subsequent MAR. See Fowler, 753 F.3d at 463 (citing Fair, 557 S.E.2d at 525); State v. Thompson, 359 N.C.77, 604 S.E.2d 850, 881 (2004) (noting that "to avoid procedural default under N.C. Gen. Stat. § 15A–1419(a)(3), defendants should necessarily raise those [ineffective assistance of counsel] claims on direct appeal that are apparent from the record."); State v. Al–Bayyinah, 359 N.C. 741, 752–53 (2005) (dismissing an ineffective assistance of counsel claim asserted on direct appeal without prejudice because "[t]rial counsel's strategy and the reasons therefor [were] not readily apparent from the record[.]"). Finally, North Carolina courts have addressed ineffective assistance of counsel claims similar to the instant claim on direct appeal. See, e.g., State v. McCoy, No. COA09-827, 2010 WL 2163359, at *5 (N.C. App. June 1, 2010) (addressing ineffective assistance of counsel claim arising out of defense counsel's failure to include a self-defense expert witness on her witness list); State v. Ginn, 59 N.C. App. 363, 375–76, 296 S.E.2d 825, 833–34 (1982) (addressing ineffective assistance of counsel claim based upon trial counsel's alleged failure to adequately investigate his case). Based upon the foregoing, the court finds that petitioner's ineffective assistance of counsel claims could have been brought on direct review.

Because petitioner did not bring his ineffective assistance of counsel claim on direct review, it was properly procedurally barred. Petitioner fails to show cause or prejudice, or that the failure to consider the issue will result in a fundamental miscarriage of justice. Therefore, petitioner's claim

of ineffective assistance of counsel is procedurally defaulted, and the court is precluded from reviewing the claim.[2]

### c. Jury Related Issues

In his third claim, petitioner asserts that his Sixth and Fourteenth Amendment rights were violated because there was juror misconduct and third-party contact with the jury. As part of this claim, petitioner makes the following allegations: jurors Lamuel Anderson and Linda Anderson[3] felt pressured during deliberations; juror Linda Anderson stated that another juror drove by the crime scene and talked about the location; and juror Lamuel Anderson and his wife, Debbie Anderson, watched news coverage of petitioner's trial and discussed Lamuel Anderson's desire to be removed from the case. Petitioner raised these claims in his MAR, and the MAR court denied them. In making its determination, the MAR court found the following facts:

> 1. [Petitioner] relies heavily upon the affidavit of a law student who spoke to several jurors in July and August of 2014, over

---

[2] Even if petitioner's ineffective assistance of counsel claim was not procedurally defaulted, he would not be entitled to habeas relief because he has not established prejudice. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish a two-prong test. First, a petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Strickland v. Washington, 466 U.S. 668, 694 (1964). For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Id. Here, petitioner is unable to establish the prejudice prong of the Strickland test because even if Dr. Wallendael had been present for the entire trial and interviewed all of the witnesses, there is no guarantee that her testimony would have been admitted at trial. See Cantu v. Collins, 967 F.2d 1006, 1016, n. 18 (5th Cir. 1992) (noting that even had the petitioner's counsel proffered an expert witness, the trial court would have had the discretion whether to admit the testimony). Moreover, as stated above, trial counsel vigorously cross examined the State's identification witnesses. See Moore, 723 F.3d at 497 ("The fact that counsel's cross-examination could have been presented along with expert testimony on eyewitness identification must not be analyzed through the distorting effects of hindsight.").

[3] Juror Linda Anderson is not related to juror Lamuel Anderson. ((DE 9), Ex. 9, p. 77).

three years after a verdict was rendered in [Petitioner's] case. *See* Def's M.A.R. Exhibit 4.

2.      This affidavit consists entirely of hearsay and was written by an affiant with no personal knowledge of the statements alleged or events described.

3.      [Petitioner] does not articulate any exception to the hearsay rules codified in the North Carolina General Statutes that would permit this Court to consider any of the information contained in Def's M.A.R. Exhibit 4.

4.      [Petitioner] also relies upon the affidavit of Lamuel Anderson, a juror in [Petitioner] trial. See Def's M.A.R. Exhibit 5.

5.      This affidavit does not contain allegations of juror misconduct or of external information influencing the jury; instead, this affidavit explores the innerworkings of jury deliberations.

6.      [Petitioner] has not presented evidence or argument through Def's M.A.R. Exhibit 5 demonstrating extraneous prejudicial information or outside influence coming to the attention of the jury pursuant to N.C. GEN. STAT. § 8C-1, Rule 606(b) (2014), nor that the verdict was reached by lot, bribery, intimidation, or in violation of the Confrontation Clause, as required by N.C. GEN. STAT. § 15A-1240 (2014).

(Pet. Ex. 4, pp. 6-7).  The MAR court, in turn, made the following conclusions of law.

1.      Def's M.A.R. Exhibit 4 is comprised entirely of hearsay, was written by an affiant with no personal knowledge of the events described, and will not be considered by this Court. N.C. Gen. Stat. § 8C-1, Rules 602, 801(c), 802 (2014).

2.      Def's M.A.R. Exhibit 5 does not contain allegations of extraneous information pertinent to the defendant or the case received by the jury. *See State v. Lyles*, 94 N.C. App. 240, 245 (Ct. App. 1989).

3.      Def's M.A.R. Exhibit 5 does not contain allegations of improper influence that actually prejudiced [Petitioner].

17

See *State v. Gilbert*, 47 N.C. App. 316, 319-20 (Ct. App. 1980).

4.      Although Def's M.A.R. Exhibit 5 demonstrates the stress that accompanies jury service on a double homicide trial, a juror is not competent to impeach their verdict under State statute and case law absent specific exceptions articulated in N.C. GEN. STAT. § 8C-l, Rule 606(b) (2014) and N.C. GEN. STAT. § 15A-1240 (2014).

5.      Def's M.A.R. Exhibit 5 solely recites the "internal influences" of jury deliberations (i.e., heated discussions, hostility, emotions, and stress), which cannot be used to impeach a jury's verdict. N.C. GEN. STAT. § 8C-1, Rule 606(b).

6.      Def's M.A.R. Exhibit 5 does not provide any legal justification for this Court to permit Mr. Anderson to impeach the verdict of [Petitioner's] jury by undermining the full and frank discussion in the jury room.

(Id. p. 7).  The court now considers each of petitioner's jury-related claims below in the context of internal and external jury influences.

1.      Internal Influence

Petitioner contends that jurors Lamuel Anderson and Linda Anderson were pressured into voting to convict petitioner in the course of the jury's deliberations.  In support of this claim, petitioner presented statements from Lamuel Anderson and Linda Anderson describing the deliberations process as "stressful," "heated," and "hostile," which ultimately caused Lamuel Anderson to request that he be removed from the jury.  ((DE 9) Ex. 9, pp. 82-83).  Petitioner also contends that Lamuel Anderson felt pressure related to his race during the jury deliberations.  (Id.) Respondent argues that these claims relate to the internal jury deliberations process and are not reviewable by this court.

18

The Sixth Amendment "guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961) (internal quotations and citations omitted); Jones v. Cooper, 311 F.3d 306, 310 (4th Cir. 2002). "[I]t is the jury that is a criminal defendant's fundamental protection of life and liberty against race or color prejudice." McCleskey v. Kemp, 481 U.S. 279, 310 (1987) (citation omitted). However, not all evidence that a petitioner seeks to introduce in an effort to impeach a jury's verdict may be considered by the courts. Robinson v. Polk, 438 F.3d 350, 359 (4th Cir. 2006) (citing Tanner v. United States, 483 U.S. 107, 117 (1987)). For instance, both the Federal Rules of Evidence and the North Carolina Rules of Evidence prohibit a juror from testifying about internal influences, such as the juror's mental process concerning the verdict. See Fed. R. Evid. 606(b); N.C. Gen. Stat. § 8C-1, Rule 606(b); Robinson, 438 F.3d at 363; United States v. Cheek, 94 F.3d 136, 143 (4th Cir. 1996); Tanner, 483 U.S. at 121 (finding that Rule 606(b) "is grounded in the common-law rule against admission of jury testimony to impeach a verdict."). Such prohibition is often referred to as the no-impeachment rule. See Pena-Rodriguez v. Colorado, __ S.Ct. __, 2017 WL 855760, at * 14 (Mar. 6, 2017). A juror, however, may testify as to "whether extraneous prejudicial information was improperly brought to the jury's attention [or whether] an outside influence was improperly brought to bear upon any juror." Fed. R. Evid. 606(b)(2).

"Under clearly established Supreme Court case law, an influence is not an internal one if it (1) is extraneous prejudicial information; *i.e.*, information that was not admitted into evidence but nevertheless bears on a fact at issue in the case, . . . or (2) is an outside influence upon the partiality of the jury, such as private communication, contact, or tampering . . . with a juror[.]" Robinson, 438 F.3d at 359 (citation omitted). Despite the general prohibition on the consideration of internal jury

19

influence, "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." Pena-Rodriguez, 2017 WL 855760, at * 14.

Here, the jurors' statements regarding stress and hostility do not relate to any fact at issue in the case, or any outside influence from a private communication, contact, or tampering. Accordingly, the jurors' statements do not describe any extraneous influence, but instead reflect their mental processes concerning the verdict. As such, the jurors' statements regarding a hostile or stressful environment do not warrant an evidentiary hearing or other habeas relief. See Robinson, 438 F.3d at 363; see also Gov't of V.I. v. Gerau, 523 F.2d 140, 150 (1st Cir. 1975) (finding that "evidence of discussions among jurors, intimidation or harassment of one juror by another, and other intra-jury influences on the verdict is within the rule, rather than the exception, and is not competent to impeach a verdict"); United States v. Briggs, 291 F.3d 958, 963 (7th Cir.) (affirming district court's denial of post-verdict motion based on a juror's allegations that jurors and the jury foreman exerted "extreme and excessive pressure on individuals to change votes"), cert. denied, 537 U.S. 985 (2002).

The court next turns to Lamuel Anderson's comment that he felt being black made other jurors think he initially voted to acquit petitioner because he and petitioner were both black. (Id. pp. 83-84). Specifically, Lamuel Anderson stated that fellow jurors inquired into "whether or not [Lamuel Anderson] knew the Richardson family, and whether or not [Lamuel Anderson] was pleading not guilty because [Lamuel Anderson is] a black male around [petitioner's] age[.]" (Id. pp. 83-84). Although the statements at issue pertain to race, they do not warrant an evidentiary hearing

because they do not pertain to any racial bias against the petitioner. See Bacon v. Lee, 225 F.3d 470, 485 (4th Cir. 2000) (holding no evidentiary hearing necessary where the forecasted evidence of juror bias pertained to racial jokes allegedly made during deliberations); United States v. Stalhout, 507 F. App'x 201, 206 (3rd Cir. 2012) (internal quotation omitted). Importantly, this case is distinguishable from the facts presented to the Court in Pena-Rodriguez, because, in this case, there is no indication that any juror relied on racial stereotypes or animus to convict petitioner. See Pena-Rodriguez, 2017 WL 855760, at * 14. Rather, the jurors questioned Lamuel Anderson with respect to whether Lamuel Anderson himself held any racial biases. Thus, the statements at issue relate to the internal jury deliberations process and are not reviewable.

Based upon the foregoing, the MAR court's decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the court of appeal's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e).

2.      External Influences

The Sixth Amendment provides criminal defendants the right to be judged by an impartial jury, and there is a presumption of prejudice when a jury is exposed to extra-record information. Remmer v. United States, 347 U.S. 227, 229 (1956); Barnes v. Joyner, 751 F.3d 229, 240 (2014) (citing Parker v. Gladden, 385 U.S. 363, 364–66 (1966)); Sherman v. Smith, 89 F.3d 1134, 1137 (4th Cir. 1996). In Remmer v. United States, 347 U.S. 227 (1956), the United States Supreme Court established a presumption of prejudice which applies to communications or contact between a third party and a juror concerning the matter pending before the jury. See id. at 229; Barnes, 751 F.3d

at 243 (applying the Remmer presumption of prejudice both on direct appeal and on § 2254 review). "[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." Smith v. Phillips, 455 U.S. 209, 215 (1982) (citation omitted). However, "not every allegation of an unauthorized communication between a juror and a third party will trigger the Remmer presumption and its corresponding hearing requirement." Barnes, 751 F.3d at 244 (citation omitted); Stockton v. Com. of Va., 852 F.2d 740, 745 (4th Cir. 1988) (finding that the presumption of prejudice "is not one to be casually invoked."); Haley v. Blue Ridge Transfer Co., Inc., 802 F.2d 1532, 1537, n. 9 (4th Cir. 1986) (noting "certain kinds of extrajudicial contacts may amount to nothing more than innocuous interventions that simply could not justify a presumption of prejudicial effect.")). Rather, "the Remmer presumption and hearing requirement are triggered after the party attacking the verdict satisfies the 'minimal standard" of showing that 'extrajudicial communications or contacts . . . were more than innocuous interventions." Barnes, 751 F.3d at 245 (quoting United States v. Cheek, 94 F.3d 136, 141 (4th Cir. 1996)).

"[T]o be entitled to the Remmer presumption and a Remmer hearing, a [petitioner] must first establish both that an unauthorized contact was made and that it was of such a character as to reasonably draw into question the integrity of the verdict." Barnes, 751 F.3d at 244. In making such a determination, the Fourth Circuit in Cheek, provides that a court must consider the following factors: any private communication; any private contact; any tampering; directly or indirectly with a juror during trial; about the matter before the jury. 94 F.3d at 141(citation omitted).

a.    Unauthorized Visit to the Crime Scene

Petitioner alleges that an unknown juror made an unauthorized visit to the crime scene based upon juror Linda Anderson's statement that "one of the jurors (a white woman whose name she did

not recall) told the other jurors that she had driven by the place where the crimes happened and talked about the location." ((DE 9), Ex. 9, p. 76). Linda Anderson, however, did not "remember exactly what this juror said." (Id. ¶ 14).

The Fourth Circuit Court of Appeals has held that a juror's unsupervised visit to a crime scene is subject to harmless-error analysis. See Sherman, 89 F.3d at 1140–41 (applying Brecht to juror's unauthorized crime site visit); Arnold v. Evatt, 113 F.3d 1352, 1361 (4th Cir. 1997). Applying the harmless error standard, petitioner is entitled to habeas relief only if the unknown juror's unauthorized visit to the crime scene " 'had a substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623 (internal quotation omitted).

Here, there is no evidence to reflect that any unauthorized visit to the crime scene had a substantial and injurious effect or influence in determining the jury's verdict. For instance, the record reflects that several photographs and a video of the crime scene were admitted as exhibits at trial. ((DE 9), Ex. 7). The admission of these exhibits at trial substantially diminishes the risk of prejudice, because any comments from the unknown juror with respect to the outside appearance of the crime scene would have added little to what was already in the jury's knowledge. See Sherman, 89 F.3d at 1142; Pyles v. Johnson, 136 F.3d 986, 996 (5th Cir. 1998) (finding juror's unauthorized visit to the crime scene was harmless error where there was a sizeable amount of evidence regarding the physical characteristics of the crime scene); see also, United States v. Morrow, 412 F. Supp. 2d 146, 168-70 (D.D.C. 2006) (finding juror's unauthorized visit to the crime scene harmless error due, in part, to the fact that "any evidence that could have been gleaned from a visit to the [crime scene] would be entirely cumulative of the Government's evidence admitted at trial.").

23

The court, additionally, notes that the juror at issue did not conduct an independent investigation or inquiry of the crime scene, but simply drove past the crime scene. This is an important distinction in that the trial judge did not instruct the jury that it could not drive past the crime scene, but instructed the jury not to "visit the scene or place that is the subject matter of this trial or make any independent inquiry or investigation about the matter." (TR. p. 1001). Moreover, there is no evidence that the actions of the unknown juror had any effect on the jury. In fact, Linda Anderson acknowledged that she did not recall exactly what the unidentified juror said. ((DE 9), Ex. 9, p. 78). Accordingly, the alleged conduct of the unknown juror did not have a substantial and injurious effect or influence in determining the jury's verdict. Sherman, 89 F.3d at 1137-42 (holding that a juror's unauthorized inspection of a tree in which the petitioner allegedly hid the murder weapon did not warrant habeas relief because it did not have a substantial and injurious effect in determining the jury's verdict).

Based upon the foregoing, the MAR court's decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the court of appeal's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e).

b.      Outside Communications

Petitioner alleges that juror Lamuel Anderson and his wife, Debbie Anderson, watched the evening news together, which included coverage of petitioner's trial, and discussed Lamuel Anderson's desire to be removed from the jury. Petitioner argues that these external influences entitle him to a hearing pursuant to Remmer.

24

Beginning with Lamuel Anderson's statements that he watched news coverage of petitioner's trial, the circumstances surrounding the external communication in the instant action are distinguishable from the circumstances presented in Remmer because Lamuel Anderson was exposed to public communications which were not directed toward him. See Remmer, 347 U.S. at 229; see also, Bagheri v. Bailey, NO. 1:14CV00077, 2016 WL 3004682, at *8 (W.D. Va. May 24, 2016) (finding that the fact that the jurors were exposed to public communications that were not directed toward them made the action distinguishable from Remmer and Cheek). The fact that Lamuel Anderson was exposed to public and not private communications negates the first three Cheek factors. As for the remaining two Cheek factors, the news broadcast did have direct contact with Lamuel Anderson, but the stated subject matter–the fact that a juror sought to be excused from the jury–was not a matter before the jury. Based upon the foregoing, the news coverage at issue is not subject to the Remmer presumption and petitioner is not entitled to a hearing. See United States v. Lloyd, 269 F.3d 228, 239 (3rd Cir. 2001) ("[W]e tend not to apply the presumption [of prejudice] to circumstances in which the extraneous information at issue is a media report, such as a television story or newspaper article."); Bullock v. United States, 265 F.2d 683, 696 (6th Cir. 1959); Thompson v. Parker, No. 5:11CV-31-R, 2012 WL 6201203, at *11 (W.D. Ky. Dec. 10, 2012) (finding Remmer distinguishable because the communication at issue in Thompson was not "a private communication, contact, or attempt to tamper with the jury, directly or indirectly. The alleged exposure to outside information was a public communication . . . "), amended on other grounds, 2013 WL 3816705 (W.D. Ky. July 22, 2013).

As for Lamuel Anderson's conversations with his wife regarding his desire to be removed from the jury, such discussions do not reasonably draw into question the integrity of the verdict.

See United States v. Baptiste, 596 F.3d 214, 221 (4th Cir. 2010) (finding the defendant did not

trigger the Remmer presumption where there was no evidence that the alleged contact with the jury

was such that it was likely to influence the verdict). Importantly, petitioner does not allege that the

television coverage or that Lamuel Anderson's wife's comments about Lamuel Anderson's desire

to be removed from the jury pertained to petitioner's guilt or innocence, or the issues before the jury.

See Remmer, 347 U.S. at 229; see also, Godoy v. Spearman, 834 F.3d 1078, 1086-1087 (9th Cir.

2016) (citations omitted); Echavarria v. Baker, No. 3:98-CV-00202, 2015 WL 225422, at * 32 (D.

Nev. Jan. 16, 2015) (" Since there was no evidence that appellants were prejudiced by media reports,

no basis exists for overturning the district court's refusal to grant a new trial based upon media

exposure."). Thus, Lamuel Anderson's conversations with his wife regarding his wish to be

removed from the jury does not implicate the Remmer presumption. See United States v. Warner,

498 F.3d 666, 680 (7th Cir. 2007) (recognizing that "[s]ometimes the circumstances are such that

the Remmer presumption does not even apply.").

In an abundance of caution, even if the Remmer presumption applied to the facts of this case,

petitioner is not entitled to habeas relief unless the communication "had a substantial and injurious

effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623; Fullwood v. Lee, 290

F.3d 663, 679 (4th Cir. 2002). Here, there is no substantial or injurious effect or influence in

determining the jury's verdict because the subject matter of the news reports and Lamuel Anderson's

conversations with his wife involved Lamuel Anderson's desire to be removed from the jury.

Lamuel Anderson made his desire to be removed from the jury known to the judge at trial. ((DE 9),

Ex. 9, p. 96). Lamuel Anderson did not discuss the news reports or his conversations with his wife

26

with the jury, and there is no indication that the alleged outside influence otherwise affected the jury's verdict. Thus, petitioner is not entitled to a hearing.

Based upon the foregoing, the MAR court's decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the court of appeal's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e).

    d.    Actual Innocence

In his fourth claim, petitioner asserts that he has newly discovered evidence that he is actually innocent of his convictions for murder and discharging a firearm into an occupied building. In support, petitioner relies upon an affidavit from his brother Andre Richardson, who attests that petitioner was with Andre Richardson on the evening of the homicides. ((DE 9), Ex. 9, pp. 106-109). The MAR court considered this claim, and denied it on the merits. (Pet. Ex. 4, p. 10-11). In ruling on petitioner's MAR, the superior court made the following findings of fact:

> 1.    Defendant alleges that his newly discovered evidence comes in the form of his own brother, Andre Richardson. Defs Motion for Appropriate Relief, 22.
>
> 2.    Defendant argues that the evidence was unknown to him prior to the trial, despite the fact that they were together both before and after the offense occurred. *Id.*
>
> 3.    The Court of Appeals recitation of facts demonstrates the State's attempts to question Andre, and acknowledges that investigators were blocked from doing so. *State v. Richardson*, No. COA12-731, 2013 N.C. App. LEXIS 208, at *16-17 (Ct. App. March 5, 2013).
>
> 4.    The evidence presented at trial demonstrated that Defendant's mother, Dorothy Richardson, actively prevented Greenville

27

Police Department Detectives from interviewing Andre about the night of the murders. State's Answer to Defendant's Motion for Appropriate Relief, l0.

5. Defendant argues that although his investigators, and not the State, were able to talk to Andre about the events surrounding the shooting, the evidence was unavailable to him because Andre withheld information. Defs Motion for Appropriate Relief, 24.

6. Defendant presented evidence at trial, but did not call Andre as a witness, despite the fact that he was in Greenville during the trial. *See id.*

7. There is no evidence in the record to show that Defendant made efforts to continue the case or to ask for Court action to require Andre's attendance at trial.

8. The information presented by Andre's affidavit–regarding otherwise unidentified individuals, including "B"- is contradictory to all witness statements and video evidence presented at trial, including the evidence presented by Defendant. *See State v. Richardson*, No. COA12-731, 2013 N.C. App. LEXIS 208, at *16 17 (Ct. App. March 5, 2013), *see also* State's Answer to Defendant's Motion for Appropriate Relief, 9, 41-50.

(Id. p. 9). Based upon the foregoing findings of fact, the MAR court made the following conclusions

of law:

1. The evidence contained in Defs M.A.R. Exhibit 9 is not newly discovered to the Defendant, who would have had knowledge of who was with him during the night of the offense and presented evidence to support his defense at trial.

2. The evidence contained in Defs M.A.R. Exhibit 9 does not meet the requirement that it is probably true, as it is inconsistent with all believable and credible eyewitness testimony, video evidence, and forensic evidence introduced at trial. State's Answer to Defendant's Motion for Appropriate Relief, 7 10; *see also State v. Richardson*, No.

COA12-731, 2013 N.C. App. LEXIS 208, at *1--4, *16 17, *St. v. Cronin*, 299 N.C. 229, 243 (1980).

3.    Defendant chose not to call Andre as a witness at trial, even though Defendant would have known whether Andre and the other individuals referenced in Defs M.A.R. Exhibit 9 were with him during the night of the offense.

4.    The record demonstrates no action on the part of Defendant to procure the attendance of this brother at trial, other than the fact that his trial counsel's investigators were the only investigators granted access to talk to Andre.

5.    Defendant has failed to present any evidence of due diligence employed to procure Andre's testimony, as required by N.C. GEN. STAT.§ 15A-1415(c). *See also Cronin*, 299 N.C. at 243.

6.    The evidence that Andre would present would be used to impeach and/or discredit the evidence presented by both sides, including the witnesses that were with the Defendant, Cario Arrington and Latoya Boyd. (R. at 1219-33, 1752-66); *see also Cronin*, 299 N.C. at 243.

7.    The State's recitation of evidence introduced at trial on pages 7- 10 of the State's Answer to Defendant's Motion for Appropriate Relief is hereby adopted and incorporated by reference; this evidence was extremely persuasive as to the Defendant's guilt and as such, it is unlikely that Andre's statements would lead to a different result.

8.    Claim Three is without merit and is summarily denied.

(Id. pp. 10-11).

Generally, "claims of actual innocence are not grounds for habeas relief[,]" but may serve as a gateway around procedural default. Rouse v. Lee, 339 F.3d 238, 255 (4th Cir. 2003) (en banc), cert. denied, 541 U.S. 905 (2004). Here, petitioner is not asserting his actual innocence claim as a gateway around procedural default, and, therefore, is not entitled to habeas relief. Even if petitioner could proceed with his claim, he would not be entitled to habeas relief. In McQuiggin v. Perkins,

—U.S. —, —, 133 S. Ct. 1924, 1928 (2013), the Supreme Court held that in order to establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995); see McQuiggin, —U.S. at —, 133 S.Ct. at 1935. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. Further, "claims of actual innocence are rarely successful," Schlup, 513 U.S. at 324, and "should not be granted casually." Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998).

As stated by the MAR court, the evidence contained in Andre Richardson's affidavit is not newly discovered. Petitioner, further, has failed to adequately explain the delay in presenting the affidavit. See McQuiggin, 133 S. Ct. at 1935 ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing" that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."); McDowell v. Lemke, 737 F.3d 476, 483–84 (7th Cir. 2013) (stating that "eleventh hour" self-serving affidavits containing no indicia of reliability and which are accompanied by no reasonable explanation for the delay are inherently suspect with respect to a petitioner's efforts to overcome procedural default). Finally, the MAR court's factual findings, including its credibility determinations are presumed correct. See 28 U.S.C. § 2254(e)(1); see also, Robinson v. Vaughan, No. 1:14-CV-642, 2015 WL 1966300, at *5, n. 5 (M.D.N.C. May 1, 2015) (finding that a state court's determination that an affidavit lacked credibility was entitled to a presumption of correctness).

Based upon the foregoing, the MAR court's decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the court of appeal's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. <u>See</u> 28 U.S.C. § 2254(d)-(e).

      e.     Racial Animosity

In his sixth claim, petitioner contends that he was denied due process due to the racial animosity during jury deliberations. For the reasons set forth above in the court's analysis of petitioner's claim regarding jury pressure, petitioner is not entitled to habeas relief on this claim.

D.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, "the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " <u>Buck v. Davis</u>, No. 15-8049, 2017 WL 685534, at *11 (Feb.

22, 2017) (quoting <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003)); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate <u>both</u> "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" <u>Rose v. Lee</u>, 252 F.3d 676, 684 (4th Cir. 2001) (quoting <u>Slack</u>, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." <u>Slack</u>, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

For the foregoing reasons, the court orders as follows:

(1)     The parties' respective motions to exceed the page limitation (DE 11, 30) are GRANTED;

(2)     Respondent's motion to strike (DE 22) is GRANTED in part and DENIED in part. The motion is GRANTED as to the affidavits of Lamuel and Debbie Anderson, and these affidavits are STRICKEN from the record. The motion is DENIED as to the remaining affidavits;

(3)     Respondent's motion for summary judgment (DE 7) is GRANTED;

(4)     The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 24th day of March, 2017.

LOUISE W. FLANAGAN
United States District Judge